**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PAUL ANTHONY V.,[1]

             Plaintiff,

    v.

FRANK BISIGNANO, Commissioner
of Social Security,

             Defendant.

Case No. 5:25-cv-00514-PD

**MEMORANDUM OPINION
AND ORDER AFFIRMING
AGENCY DECISION**

    Plaintiff challenges the denial of his application for Supplemental Security Income. For the reasons discussed below, the decision of the Administrative Law Judge is affirmed.

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the United States Judicial Conference Committee on Court Administration and Case Management. Pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, the current Commissioner of Social Security, is hereby substituted in as the Defendant.

## I. Pertinent Procedural History and Disputed Issues

On June 25, 2020, Plaintiff filed a Title XVI application for supplemental security income, alleging that he became disabled on January 15, 2013. Administrative Record ("AR") 17, 323-39.[2] His application was denied initially on October 21, 2021, and upon reconsideration on February 4, 2022. AR 93, 115. On March 4, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 160-62. On December 5, 2022, a hearing was held before the ALJ who heard testimony from Plaintiff and a vocational expert ("VE"). AR 39-56. On December 21, 2022, the ALJ issued a decision that Plaintiff was not disabled. AR 116–34. Plaintiff appealed, and on December 18, 2023, the Appeals Council granted Plaintiff's request to review the December 21, 2022 decision and remanded Plaintiff's claim back to the ALJ for further proceedings and a new decision. AR 135–39.

The ALJ held a second hearing on May 22, 2024. AR 57-73. Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff, Plaintiff's mother, and a VE. *Id.* On June 21, 2024, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act ("SSA"). AR 17-32. On January 24, 2025, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. AR 1-6.

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation as stated by Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Plaintiff

---

[2] The Administrative Record is CM/ECF Docket Numbers 12-1 through 12-9. Plaintiff's opening brief is at Docket Number 13, Defendant's Brief is at Docket Number 14, and Plaintiff's Reply Brief is at docket Number 15.

has not engaged in substantial gainful activity since June 25, 2020, the application date.  AR 19 ¶ 1.  At step two, the ALJ found that Plaintiff has the following severe impairments: "depressive disorder, anxiety and panic disorder, and schizoaffective disorder, depressive type (20 CFR 416.920(c))."  AR 19 ¶ 2.  The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities.  AR 19.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).   AR 20 ¶ 3.

Before proceeding to step four, the ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations:

> only has the capacity to: perform simple, routine tasks; occasionally interact with supervisors but have no contact with co-workers and the public; work in a job in a low-stress environment (e.g., no high production quotas and simple, routine work); and work in a familiar work setting, where everything is the same at work from day to day (same job, same routine, and same people).

AR 23 ¶ 4.

At step four, the ALJ found that Plaintiff has no past relevant work.  AR 31 ¶ 5.  At step five, considering Plaintiff's age (38 years old on the date the application was filed), education, work experience, and RFC, the ALJ found that there are jobs which exist in significant numbers in the national economy that Plaintiff can perform, in the occupations of "day worker", "cleaner, laboratory equipment", and "housekeeping cleaner."  AR 31, 32 ¶¶ 6-9.  Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the SSA, since June 25, 2020, the date the application was filed.  AR 32 ¶ 10.

Plaintiff raises four issues: (1) Whether the ALJ failed to provide clear, convincing, and well-supported reasons for discounting Plaintiff's allegations of mental dysfunction; (2) Whether the ALJ failed to properly evaluate the treating medical source opinion of licensed therapist, Amy Herter, L.M.F.T.; (3)  Whether the ALJ failed to properly evaluate the treating medical source opinion of psychiatric nurse practitioner, Yuri Villaruel, P.M.H.N.P.; and (4) Whether the ALJ failed to resolve an apparent inconsistency between the VE's testimony and the Dictionary of Occupational Titles.  Dkt. No. 13 at 5.

## II.    Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits.  A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *see also Biestek v. Berryhill*, 587 U.S.97, 103 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record.  *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020).  Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[3]

---

[3] Although statements in unpublished Ninth Circuit opinions "may prove useful [ ] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law.  *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used ... as the pivotal basis for a legal ruling by a district court").

4

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path may reasonably be discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## III. Discussion
### A. The ALJ Properly Considered Plaintiff's Subjective Symptom Statements and Testimony

#### 1. Applicable Law

In the absence of proof of malingering, an ALJ may reject a litigant's believability by identifying "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *see also Smartt v. Kijakazi,* 53 F. 4th 489*,* 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show his work[.]"). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony. *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024). (emphasis in original).

An ALJ may consider a claimant's conservative treatment when evaluating credibility, particularly when the claimant "responded favorably" to minimal treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) (same). Proof of "conservative treatment is sufficient to discount a claimant's

testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Mojarro v. Berryhill*, 746 F. App'x 672 (9th Cir. 2018) (same).  An ALJ may also rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and the claimant's daily activities.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018) (same).

An ALJ may consider a variety of factors in analyzing the believability of a claimant's symptom testimony, including "ordinary techniques of credibility evaluation."  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. 2019) (same).

An ALJ can consider whether there is a lack of objective medical evidence supporting a claimant's allegations.  However, this factor "cannot form the sole basis" for discounting subjective symptom testimony.  *Burch*, 400 F.3d at 681; *Davis v. Berryhill*, 736 F. App'x 662, 665 (9th Cir. 2018).

A court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must only consider the reasoning actually given by the ALJ.  *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

Even if an ALJ impermissibly relies "on one of several reasons in support of an adverse credibility determination," the error is harmless if "the ALJ's remaining reasoning and *ultimate credibility determination* were adequately supported by substantial evidence in the record."  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation omitted).

### 2. Plaintiff's Subjective Symptom Statements and Testimony

Plaintiff alleged disability due to a variety of mental impairments, including schizoaffective disorder, depressive type, depressive disorder, anxiety and panic disorder with agoraphobia.  AR 19, 698, 723, 726, 729, 752, 756, 758, 766, 774, 780, 792, 818.  As pertinent to the disputed issue, Plaintiff testified at the administrative hearing that he has not had any steady work since 2018 because he has panic attacks and cannot be around people.  AR 62. He testified that he is afraid to be outside, afraid to be in cars in case he has a bad panic attack or hallucination, afraid of cops, and cannot go anywhere for a job because he is too afraid.  AR 62, 63. Plaintiff testified that he has been in therapy for two years and his therapist is trying to help him get out more.  AR 63, 64.  He stated that he tries to go outside his house for ten minutes but cannot "stand that long" outside because his "legs will start going out" or he feels dizzy.  AR 64.  Plaintiff testified that his panic attacks started approximately ten years ago.  AR 64.

Plaintiff testified that on a normal day he watches television or tries to distract himself from having a panic attack.  AR 64.  Plaintiff stated that he has visual hallucinations where he is "floating, dying [or] demon stuff."  AR 65.  Plaintiff testified that his mother helps him when he has panic attacks and helps him with his medications.  AR 65-66.  Plaintiff graduated from high school in 2000.  AR 67.  He stated that he has been "off alcohol for five years." AR 67.  Plaintiff testified that he has only one friend from high school, whom he does not see "that much."  AR 67-68.

Plaintiff's mother also testified at the hearing and stated that she did not believe her son could work because he cannot be in a car or bus and when he leaves the house he panics and goes back into the house.  AR 68.  She testified that Plaintiff is afraid to be around people, that she needs to remind

him to take a shower, and that he has one friend that he talks to on the phone. AR 70.

In Plaintiff's Adult Function Reports, he alleges that he experiences panic attacks all the time when he is around people, when he goes outside, when he is in a car, or hears loud noise. AR 389, 423. On a normal day, he stated he watches television, talks on the phone, plays on his phone, and feeds himself. AR 390, 424. He stated he can wash floors when he is told. AR 390, 425. Plaintiff stated he does not drive because of his panic attacks. AR 392, 426. Plaintiff stated his daily hobbies are watching television, playing video games, or sitting in his room. AR 393, 427. Plaintiff stated that he spends time with others either in person, on the phone, or video chat and stated that "my friends come over and visit me." AR 393, 427. He stated that his conditions affect his ability to lift, squat, stand, walk, talk, his memory, concentration, and ability to complete tasks, understand, and follow instructions. AR 394, 428. Plaintiff stated that he does not handle stress or changes in routine. AR 395, 429. Plaintiff listed the following three medications for his conditions: Buspirone, Alprazolam, and Albuterol Sulfate and did not list any side effects. AR 396, 430.

### 3.    Analysis

The ALJ found the record supported Plaintiff's claims of significant limitations in mental functioning, but not to the disabling degree he alleged. AR 23, 24, 30, 31. The ALJ further found the medical evidence and Plaintiff's demonstrated capabilities supported a degree of residual functioning. *Id. See* 20 C.F.R. § 416.929(a)-(d). The ALJ crafted an RFC that accounted for both the evidence supporting limitations and the evidence supporting residual capabilities—work entailing just simple, routine tasks; no contact with coworkers and the general public and just occasional interaction with supervisors; a low-stress environment (e.g., no high production quotas and

simple, routine work); and a familiar work setting where everything was the same at work from day to day (e.g., same job, same routine, same people).  AR 23 ¶ 4.

Plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons for discounting his subjective complaints with respect to his mental dysfunction.  Dkt. Nos. 13 at 5-15; 15 at 2-4.  "To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis: 'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.' " *Ferguson*, 95 F.4th *Id.* at 1199 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)).  If step one is satisfied, the ALJ can only reject the plaintiff's testimony for "clear and convincing reasons," which ultimately requires the ALJ to "show [their] work."  *Id.* (citations and internal quotation marks omitted).

At step two of the subjective symptom testimony analysis, an ALJ must identify which testimony is not credible and specifically link that testimony to evidence in the record that undercuts the credibility of the testimony.  *See Brown-Hunter*, 806 F.3d at 494; *accord Ferguson*, 95 F.4th at 1200-01.  The ALJ may not simply make the conclusory statement that Plaintiff's testimony is not credible because it is inconsistent with the record and then proceed with an RFC analysis.  *Brown-Hunter*, 806 F.3d at 493-94.  This is because the obligation to provide clear and convincing "reasons" for discounting a plaintiff's testimony is separate and distinct from any obligation to summarize medical record evidence that supports an RFC determination.  *Id.*

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements and the corroborating statements of his mother "concerning the intensity, persistence, and limiting effects of these

symptoms are not entirely consistent with the medical evidence and the other evidence in the record for the above reasons." AR 30-31.

As the ALJ did not find that Plaintiff had engaged in any degree of malingering, the ALJ was obliged to provide at least one "specific, clear, and convincing" reason supported by substantial evidence for discounting Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms. *Trevizo,* 871 F.3d at 678. The ALJ did so here, describing two areas in which Plaintiff's testimony was inconsistent: (1) objective medical evidence; and (2) Plaintiff's activities. AR 23-29.

### a) Objective medical evidence

The ALJ properly discounted Plaintiff's subjective symptom statements and testimony because they were at least in part inconsistent with the objective medical evidence. *See Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (ALJ's conclusion that objective medical evidence was inconsistent with plaintiff's statements of mental symptoms was specific, clear, and convincing reason for discounting his statements). As the ALJ observed, the medical record demonstrated that Plaintiff had a history of depressive disorder, anxiety and panic disorder, and schizoaffective disorder, depressive type. AR 19-30.

The ALJ discussed the medical evidence in detail and pointed out that Nurse Yuri Villaruel, P.M.H.N.P., performed an initial evaluation in September 2022 and found: no speech abnormalities; no psychomotor retardation or agitation; mood described as "always anxious" and "I don't even leave the house if I don't have to"; mood congruent and restless affect; no thought content abnormalities (including no hallucinations, no delusions, no paranoia, no obsessions, and no suicidal ideation, plan, or intent); good insight and judgment; and good impulse control. AR 26 (citing AR 714). The ALJ pointed out that subsequent examinations by Nurse Villaruel through March

2024 did not reflect significant changes except different descriptions of mood; mildly disorganized thought process and fair insight and judgment in November 2022; diffused paranoia, exacerbated anxiety symptoms, and mildly disorganized and repetitive thought process in January 2024; and mild disorganization and worry and preoccupation about usual daily routines in March 2024. AR 26-27 (citing AR 718, 720, 722, 725, 728, 731, 733, 735, 737, 739, 741, 743, 745).

The ALJ also pointed out that Amy Herter, L.M.F.T., performed an initial evaluation in Plaintiff in October 2022 and noted that Plaintiff had "*intact* attention; anxious and dysphoric mood; congruent affect; fearful thought process; auditory and visual hallucinations; paranoid delusions; and isolative behavior." AR 27 (citing AR 697). Ms. Herter diagnosed Plaintiff with schizoaffective disorder, depressive type and panic disorder. AR 27 (citing AR 698). The ALJ further pointed out that later in October 2022, Ms. Herter observed "*sufficient* attention; anxious, dysphoric, irritable, and labile mood; tearful and labile affect; fearful thought process; isolative and withdrawn behavior; normal speech; and no suicidal ideation." AR 27 (citing AR 699, 700). The ALJ explained that Ms. Herter's subsequent examinations of Plaintiff through January 2024 do not reflect significant changes except anxious, agitated, and labile mood and fast mood in January 2022; passive suicidal ideation in December 2022; and additional paranoia feeling "people are looking at him while he is out" in June 2023 (continuing through January 2024). AR 27 (citing AR 769, 779, 847).

The ALJ noted instances where Plaintiff displayed mood-related findings (anxious, depressed, irritable, tearful, fearful, isolative, withdrawn), poor grooming, poor eye contact, rapid speech, rapid motor movements, mildly disorganized thought processes, impaired delayed memory, fair insight and judgment, was unable to perform serial sevens, and reported hallucinations, paranoia, and panic attacks. *See* AR 24–27 (citing AR 549, 562, 572, 580, 645,

11

648–49, 656, 660, 665–66, 697, 718, 720, 722, 725, 728, 731, 733, 735, 737, 739, 741, 743, 745, 753, 757, 759, 767, 769, 771, 779, 847, 901).   The ALJ also pointed out contrasting instances where Plaintiff presented with good eye contact, normal speech, logical and goal-directed thought processes, normal thought content (free of hallucinations, delusions, paranoia, obsessions, and suicidal ideations), intact immediate memory, normal motor movements, good insight, good judgment, and was able to hold a conversation and perform serial threes.  *See* AR 24–29 (citing AR 595, 604, 699-700, 714).

The ALJ highlighted an August 2021 psychiatric consultative examination performed by Dr. Earnest A. Bagner, III who noted that Plaintiff had a history of alcohol dependence but was clean and sober for two years; lived with his mother and stepfather; was able to bathe and dress himself and do household chores; and had a "fair" relationship with family and friends. AR 25 (citing AR 547-48).  The ALJ noted Dr. Bagner's mental-status examination findings that showed there was: poor grooming; anxious appearance; good eye contact; emotional speech with rapid rate but normal tone and volume; anxious mood; appropriate affect no psychomotor retardation; no suicidal thoughts; normal thought process; no delusions; and no hallucinations.  AR 25 (citing AR 547-49).  Dr. Bagner diagnosed Plaintiff with alcohol dependence (full remission); major depressive disorder with anxiety; anxiety disorder; panic disorder; and rule out borderline intellectual functioning.  AR 25 (citing AR 549).  The ALJ pointed out Dr. Bagner's conclusions that Plaintiff was moderately limited in following detailed instructions; moderately limited in interacting appropriately with the public, co-workers, and supervisors; mildly limited in complying with job rules, such as attendance and safety; mildly limited in responding in changes in a routine work setting; and mildly limited in responding to work pressure in a usual work setting.  AR 25 (citing AR 550).

The ALJ also pointed out that in October 2021, Dr. Nadine Genece, the

12

State agency psychological consultant, reviewed Plaintiff's medical records and assessed moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others (but marked limitations specifically in interacting appropriately with the general public); moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself.  AR 25 (citing AR 81-82, 85-89).  The ALJ highlighted that Dr. Genece determined that Plaintiff could perform unskilled work; could sustain concentration, persistence, and pace for simple, repetitive tasks; could respond appropriately to coworkers and supervisors but not the public; and could adapt to changes in a routine work setting.  AR 25-26 (citing 85-89).  The ALJ emphasized that these opinions were corroborated by Dr. Susan South, the other State agency psychological consultant, in February 2022.  AR 26 (citing AR 103, 107-11).

The ALJ found that Plaintiff's allegations of generally disabling symptoms and limitations are not substantiated by the evidence in the record, including Dr. Bagner's consultative examination, the treatment history, Plaintiff's activities and the medical opinions of Dr. Genece and Dr. South.  AR 30.  While inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony, inconsistencies are factors that the ALJ may consider when evaluating subjective symptom testimony.  *Burch*, 400 F.3d at 681; *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001); *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") Accordingly, the ALJ properly partially discounted Plaintiff's subjective symptom statements and testimony because they were at least in part inconsistent with the objective medical evidence.  *See Brown-Hunter*, 806 F.3d at 493; *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ correctly discounted plaintiff's subjective symptom statements regarding

13

mental impairment because "his mental status evaluations did not reveal such cognitive defects").

### b)    Daily activities

The ALJ found Plaintiff's activities inconsistent with his subjective symptom statements and testimony.  AR 21-22, 25-26, 28-29, 30. The ALJ explained that while Plaintiff testified that he could not be around people and only had one friend, the record showed that he was able to maintain relationships with his family, a girlfriend, and several friends, and interact with neighbors.  AR 21–22, 28–29, 62, 68 (citing AR 789 (reporting spending time with a female friend), AR 797 (reporting helping a neighbor), AR 821 (reported going out with two friends), AR 827 (reporting a friend came over to his house), AR 857 (reported spending time with his girlfriend), AR 877 (same), AR 881 (same), AR 955 (reporting he met a new neighbor).  The ALJ found that Plaintiff's allegations of generally disabling symptoms and limitations are not substantiated by the evidence in the record, including Plaintiff's activities such as playing video games; playing interactive online games with others; riding a scooter; spending time with others, including going to his girlfriend's house, playing lawn games with his girlfriend, going out with friends on a Saturday night, having friends come over, talking with friends on the phone, and meeting a new neighbor; having no problem with personal care; preparing simple meals; doing household chores, including washing floors; working out; going to the store; helping his girlfriend paint her room; and helping a neighbor move a mattress.  AR 30.  The ALJ explained that while these activities cannot be directly compared to specific work-related activities, they are suggestive of a level of functionality not altogether consistent with Plaintiff's general allegation of disability. AR 30.

Plaintiff argues that while he was able to engage in certain activities, he had difficulty doing so and these activities are not at odds with his allegations

14

of mental disability.  Dkt. Nos. 13 at 8-11; 15 at 3-4.   The ALJ expressly acknowledged Plaintiff's difficulties and found that Plaintiff's abilities to engage in these social interactions supported a degree of social functioning appropriate for inclusion in his RFC.  AR 28–29.  Notably, the ALJ limited Plaintiff to a very narrow range of social functioning that prohibited any interactions with the public and with coworkers and only occasional interactions with supervisors.  AR 23.

Although Plaintiff was not required to be "utterly incapacitated to be eligible for benefits," *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996), his activities were grounds for discounting his testimony to the extent they contradicted his claim of a totally debilitating impairment and showed that his symptoms were not as severe as he claimed. *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (ALJ properly considered plaintiff's daily activities in discounting subjective symptom testimony because evidence suggested plaintiff's claims about severity of limitations were exaggerated).  While Plaintiff may have a different interpretation of the medical evidence, he does not show that the ALJ's interpretation was error. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."); *Ryan*, 528 F.3d at 1198 (same).

In sum, the ALJ provided specific and legitimate reasons for discounting Plaintiff's symptom testimony.  *Trevizo*, 871 F. 3d at 675.

**B.    The ALJ Did Not Err in Evaluating the Medical Opinions of Amy Herter, L.M.F.T. and Nurse Practitioner Yuri Villaruel, P.M.H.N.P.**

Plaintiff argues that the ALJ failed to properly consider the medical opinions of licensed therapist, Amy Herter, L.M.F.T. and psychiatric nurse

15

practitioner Yuri Villaruel, P.M.H.N.P.  Dkt. Nos. 13 at 5, 15-25.  Plaintiff contends that the ALJ failed to adequately consider the factors of supportability and consistency in evaluating Ms. Herter and Nurse Villaruel's opinions.  *Id*.   The Commissioner disagrees and argues that substantial evidence supports the ALJ's evaluation of their opinions.  Dkt. No. 14 at 8-13.

### 1.    Applicable Law

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Social Security Ruling 96-8P, 1996 WL 374184, at *1 (1996).  It reflects the most a claimant can do despite their limitations.  *Smolen*, 80 F.3d at 1291.  An RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians.  20 C.F.R. § 404.1545.  It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record.  *Ford*, 950 F.3d at 1149.  Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld.  *Ryan*, 528 F.3d at 1198.

The ALJ, not the claimant's physician, "is responsible for translating and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  In rendering the RFC, the ALJ "must articulate a 'substantive basis for rejecting a medical opinion or crediting one medical opinion over another.'"  *Sandra B. v. Kijakazi*, 2022 WL 2651981, at *2 (C.D. Cal. Jul. 8, 2022) (citing *Garrison*, 759 F.3d at 1012).

For claims filed on or after March 27, 2017, the Social Security Administration's new regulations, which alter the framework for how an ALJ must evaluate medical evidence, apply.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 2017 WL 168819, at 5844-

45 (Jan. 18, 2017); *Loriel C. v. Saul*, 2020 WL 4340742, at *11 (E.D. Wash. July 28, 2020).  ALJs are now required to articulate "how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings."  20 C.F.R. §§ 404.1520c(a), (b).

The factors for considering persuasiveness include supportability, consistency, relationship with claimant (e.g. length of the treatment relationship, frequency of examinations, etc.), specialization, and other factors that tend to support or contradict a medical opinion.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5).  While all factors should be considered, the ALJ must articulate how he or she considered the factors of supportability and consistency.  *See* 20 C.F.R. § 404.1520c(b)(2); *Buethe v. Comm'r of Soc. Sec.*, 2021 WL 1966202, at *3-4 (E.D. Cal. May 17, 2021) (explaining that while an ALJ is required to consider all factors, the ALJ must at least explain how she considered the supportability and consistency factors because they are the most important).

The ALJ "must do so in sufficient detail to allow a reviewing court to determine whether that reasoning is free of legal error."  *Robert D. v. Kijakazi*, 2021 WL 5905734, at *4 (S.D. Cal. Dec. 14, 2021).  "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding is."  *Christopher F. v. Comm'r of Soc. Sec.*, 2020 WL 7022484, at *2 (W.D. Wash. Nov. 30, 2020) (quoting 20 C.F.R. §§ 404.1520c(C)(1)-(2)).  Under the new regulations, an ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

An RFC is defective if it fails to take a plaintiff's limitations into account.  *Valentine.*, 574 F.3d at 690.  However, "there is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for

17

translating and incorporating medical findings into a succinct RFC." *McIntosh v. Colvin*, 2018 WL 1101102, at \*5 (S.D. Cal. Feb. 26, 2018); *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) ("ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination."); *see also Foster v. Kijakazi*, 2022 WL 3230472, at \*2 (9th Cir. 2022) ("An ALJ considers opinions from medical sources on the issue of a claimant's RFC, but the final responsibility for deciding this issue is reserved to the Commissioner.") (citations, internal quotation marks, and alterations omitted). Finally, it is well established that RFC determinations are legal decisions, not medical opinions. *Valerie C. v. Berryhill*, 2019 WL 450675, at \*6 (C.D. Cal. Feb. 5, 2019).

### 2. Amy Herter, L.M.F.T.

Plaintiff participated in psychotherapy with Ms. Herter for panic disorder with agoraphobia and schizoaffective disorder, depressive type from October 2022 through March 2024. *See* AR 697, 751, 755, 757, 765, 773, 791, 819, 828, 839, 983. On October 30, 2022, Ms. Herter completed a mental impairment questionnaire assessing Plaintiff's psychological limitations. AR 704-5. She reported that Plaintiff experienced side effects from his medications including drowsiness, lethargy, malaise, and irritability. AR 704. Ms. Herter opined that Plaintiff was markedly limited in his ability to interact with others, and extremely limited in his ability to understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage himself in a work setting. AR 704. Ms. Herter described Plaintiff's disorder as serious and persistent, noting that he required ongoing medical treatment, mental health therapy, psychosocial support, or a highly structured environment to manage his symptoms. AR 705. Ms. Herter further opined that, if Plaintiff were to work full-time, he would miss more than four days of work per month. AR 705.

18

### 3.    Nurse Practitioner Yuri Villaruel, P.M.H.N.P.

Nurse Villaruel treated Plaintiff for panic disorder with agoraphobia and schizoaffective disorder, depressive type from September 2022 through March 2024.  *See* AR 714, 720, 725-26, 731-32, 737, 741-42, 745.  In October of 2022, Nurse Villaruel completed a mental impairment questionnaire assessing Plaintiff's psychological limitations. AR 702-3.  He reported that Plaintiff experienced medication side effects including drowsiness, lethargy, malaise, and irritability.  AR 702.  Nurse Villaruel further opined that Plaintiff was markedly limited in his ability to interact with others, and extremely limited in his ability to understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage himself in a work setting.  AR 702.  Nurse Villaruel described Plaintiff's disorder as serious and persistent, noting that he required ongoing medical treatment, mental health therapy, psychosocial support, or a highly structured environment to manage his symptoms.  AR 703.  Nurse Villaruel also opined that, if Plaintiff were to work full-time, he would miss more than four days of work per month.  AR 703.

On April 3, 2024, Nurse Villaruel completed a second mental impairment questionnaire assessing Plaintiff's psychological limitations.  AR 987-88.  He reported that Plaintiff experienced side effects from his medication including sedation, drowsiness, fatigue, nausea, and dizziness.  AR 987.  Nurse Villaruel further opined that Plaintiff was moderately limited in his ability to interact with others; understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage himself in a work setting, describing Plaintiff's disorder as serious and persistent.  AR 987-88.  Nurse Villaruel also opined that, if Plaintiff were to work full-time, he would miss more than four days of work per month.  AR 988.

### 4.   The ALJ's Decision

The ALJ reviewed the medical opinions and prior administrative medical findings from several medical sources concerning Plaintiff's mental limitations and capabilities.  AR 21–23, 25, 29–30, 86–89, 107–11, 547-50, 702–05, 998–99.   Psychiatric consultative examiner Dr. Bagner found Plaintiff had just mild-to-moderate mental limitations.  AR 21–22, 25, 29–30, 547-50.  Ms. Herter found that Plaintiff had marked-to extreme mental limitations.  AR 21–23, 27–30, 704–5.  Nurse Villaruel also assessed marked-to-extreme mental limitations, however, he later changed his opinion and concluded Plaintiff had just moderate mental limitations.  AR 21–23, 27, 29–30, 702–3, 998–99.  State agency psychological consultants Dr. Nadine Genece and Dr. Susan South assessed moderate limitations in all areas of mental functioning, except that Plaintiff had marked limitations in interacting with the public.  AR 21–22, 26, 30, 86–89, 107–11.  Dr. Genece and Dr. South each assessed an RFC for unskilled work involving simple, repetitive tasks and no interaction with the public.  AR 21.

The ALJ found Ms. Herter's opinion assessing generally "extreme" limitations unpersuasive.  AR 29 (citing AR 704-5).  The ALJ pointed out that while Ms. Herter's treatment records reflect significant abnormalities on examination (including tearful and labile affect, paranoid delusions, and isolative and withdrawn behavior), her findings on examination (including "intact" and "sufficient" attention), do not explicitly support the extreme limitations and more than four absences imposed including an extreme limitation in concentrating.  AR 29.  The ALJ further explained that Ms. Herter's opinion is not consistent with the other evidence in the record (such as Dr. Bagner's consultative examination and opinion, the State agency opinions, Nurse Villaruel's treatment records and April 2024 opinion, and other treatment records).  AR 29.

The ALJ found Nurse Villaruel's October 2022 opinion assessing marked and extreme limitations unpersuasive because it is not supported by his relatively unremarkable treatment records (which do not document persistent and significant abnormalities on examination) or consistent with the other evidence in the record (such as Dr. Bagner's consultative examination and opinion, the State agency opinions, and other treatment records).  AR 29 (citing AR 702-3).   The ALJ also found Nurse Villaruel's April 2024 opinion assessing moderate limitations unpersuasive.  AR 30 (citing AR 987-88).  The ALJ pointed out that while Nurse Villaruel's across-the-board moderate limitations are supported by his treatment records and consistent with the other evidence in the record (such as Dr. Bagner's consultative examination and opinion, the State agency opinions, and other treatment records), his absence provision is internally inconsistent with both the moderate limitations assessed and the other evidence in the record.  AR 30 (citing AR 987-88, 998-99).

### 5.    Analysis

In finding Ms. Herter and Nurse Villaruel's opinions unpersuasive, the ALJ was required to provide an explanation, supported by substantial evidence, of his consideration of the supportability and consistency factors. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Woods*, 32 F.4th at 787.

Here, the ALJ noted Ms. Herter's opinions in an October 2022 Mental Impairment Questionnaire for Plaintiff assessing extreme limitations (including in "concentrating") in work-related activities except for a marked limitation in interacting with others.  AR 27 (citing AR 704-5).  The ALJ found Ms. Herter's opinions unpersuasive, concluding that neither the supportability nor consistency factors were satisfied.  AR 29.  As to supportability, the ALJ explained that while Ms. Herter's treatment records reflect significant abnormalities on examination, including tearful and labile

21

affect, paranoid delusions, and isolative and withdrawn behavior, her findings on examination including "intact" and "sufficient" attention, do not explicitly support the extreme limitations and more than four absences imposed including an extreme limitation in concentrating.  AR 27, 29.  The ALJ explained that Ms. Herter did not provide an explanation as to why "intact" and "sufficient" attention on examinations equates to an extreme limitation in concentrating.  AR 27.  The ALJ further explained that Ms. Herter failed to document findings that would specifically substantiate her "extreme" limitations in remembering information, notwithstanding descriptions of tearful and labile affect, paranoid delusions, and isolative and withdrawn behavior, which the ALJ found do not explicitly support limitations in understanding, remembering, or applying information.  AR 21.  The ALJ further explained that Nurse Villaruel's contemporaneous examinations did not reflect the same abnormalities described by Ms. Herter.  AR 27-28.

As to consistency, the ALJ explained that Ms. Herter's opinion is not consistent with the other evidence in the record such as Dr. Bagner's consultative examination and opinion, the State agency opinions, Nurse Villaruel's treatment records and April 2024 opinion, and other treatment records.  AR 21-31.  The ALJ highlighted medical evidence from Dr. Bagner who found that Plaintiff had normal thought processes, intact immediate memory, and the concentration and calculation capabilities to perform serial threes that contradicted Ms. Herter's extreme limitations in mental functioning.  AR 21-31.

The ALJ also noted Nurse Villaruel's October 2022 Mental Impairment Questionnaire for Plaintiff assessing extreme limitations (including in "concentrating") in work-related activities except for a marked limitation in interacting with others.  AR 27 (citing AR 702-3).  The ALJ found Nurse Villaruel's opinions unpersuasive, concluding that neither the supportability nor consistency factors were satisfied.  AR 29.  As to supportability, the ALJ

explained that Nurse Villaruel's October 2022 opinion is not supported by his relatively unremarkable treatment records which do not document persistent and significant abnormalities on examination. AR 29. The ALJ noted that Nurse Villaruel performed an initial evaluation in September 2022 and found: no speech abnormalities; no psychomotor retardation or agitation; mood described as "always anxious" and "I don't even leave the house if I don't have to"; mood congruent and restless affect; no thought content abnormalities (including no hallucinations, no delusions, no paranoia, no obsessions, and no suicidal ideation, plan, or intent); good insight and judgment; and good impulse control. AR 26 (citing AR 714). The ALJ explained that there was little evidence, including the treatment records of Nurse Villaruel, to support the extreme limitations in mental functioning. AR 21.

The ALJ further noted that subsequent examinations by Nurse Villaruel through March 2024 do not reflect significant changes except different descriptions of mood; mildly disorganized thought process and fair insight and judgment in November 2022; diffused paranoia, exacerbated anxiety symptoms, and mildly disorganized and repetitive thought process in January 2024; and mild disorganization and worry and preoccupation about usual daily routines in March 2024. AR 26-27 (citing AR 718, 720, 722, 725, 728, 731, 733, 735, 737, 739, 741, 743, 745). The ALJ found that these findings including intermittently mildly disorganized thought process and, in January 2024 only, diffused paranoia with exacerbated anxiety symptoms do not support the "extreme" limitations or the more than four absences a month assessed by Nurse Villaruel in his October 2022 opinion. AR 27 (citing AR 702-03). The ALJ highlighted that Nurse Villaruel failed to observe any findings on examinations from September 21, 2022, through March 8, 2024, that corroborate his "extreme" limitations in remembering information. AR 21.

23

As to consistency, the ALJ explained that Nurse Villaruel's October 2022 opinion is not consistent with the other evidence in the record such as Dr. Bagner's consultative examination and opinion, the State agency opinions, and other treatment records. AR 29 (citing AR 702-3). The ALJ further explained that Nurse Villaruel's 2024 opinion is not consistent with the other evidence in the record such as Dr. Bagner's consultative examination and opinion, the State agency opinions, and other treatment records as described earlier. AR 30 (citing AR 987-88, 998-99). The ALJ explained that Nurse Villaruel's absence provision is internally inconsistent with both the moderate limitations assessed and the other evidence in the record. AR 30. The ALJ highlighted medical evidence from Dr. Bagner, Dr. Genece, and Dr. South who all concluded that Plaintiff did not have extreme limitations in mental functioning. AR 21-31, 86-89, 107-11, 538-39.

Plaintiff argues that the ALJ committed reversible error by finding that Ms. Herter and Nurse Villaruel's opinions were unpersuasive. Dkt. No. 13 at 17-25. Plaintiff points to evidence that he believes could have supported a different outcome, without identifying reversible error in the ALJ's alternate interpretation of the evidence. *Id*. at 18, 23. As to Ms. Herter's assessment of extreme mental limitations, Plaintiff notes that Ms. Herter's records documented mood-related findings (depressed, hopeless, irritable) and impaired judgment. *Id*. at 18. However, the ALJ expressly addressed these findings and explained that although Ms. Herter's "records note significant abnormalities on examination … these findings, by themselves, do not inevitably result (or indisputably substantiate) the extreme limitations (or more than four absences assessed)." AR 27. Plaintiff does not establish that findings regarding his mood and judgment caused extreme limitations in areas like understanding, remembering, applying information, and/or concentrating. Dkt. No. 13 at 18. Further, Ms. Herter repeatedly found that Plaintiff nonetheless maintained intact and/or sufficient attention despite his

mental symptoms.  AR 21-22, 26-28, 697, 699, 751, 781, 785, 849, 865, 883, 969, 981.

Similarly, Plaintiff notes that Nurse Villaruel found Plaintiff displayed positive mood-related findings (anxious, depressed, irritable), three instances of mildly disorganized and/or repetitive thought processes, and an instance of low impulse control, and poor judgment.  Dkt. No. 13 at 23.  Plaintiff, however, does not explain how these findings supported Nurse Villaruel's assessment of extreme limitations in areas like understanding, remembering, applying information, and/or concentrating.  Further, Nurse Villaruel mostly found that Plaintiff presented with "intact" and "linear, focused, and goal-oriented" thought processes, "good" judgment, and "good" impulse control.  AR 21, 26–27, 714, 716, 718, 722, 725, 728, 731, 733, 735, 737, 739.  Plaintiff fails to establish any error in the ALJ's conclusion that neither Ms. Herter nor Nurse Villaruel documented medical findings supporting their assessments of extreme limitations in all areas of mental functioning.

Plaintiff also fails to show that the ALJ committed error in finding that Ms. Herter and Nurse Villaruel's opinions were not consistent with other evidence in the record.  Dkt. No. 13 at 19.  Plaintiff points to Dr. Bagner's findings that Plaintiff was poorly groomed, and had rapid speech, impaired delayed memory, and could not perform serial 7s or spell the word "music" forward or backward, yet Plaintiff does not explain how these findings compelled finding extreme limitations in all areas of mental functioning.  *Id.* at 19 citing AR 536, 538, 547, 549.  Notably, Dr. Bagner himself found that these findings—along with other findings evidencing residual mental functioning like clear and coherent speech, intact immediate memory, normal thought processes, normal thought content (free of paranoia, delusions, and hallucinations), intact ability to perform serial threes, and intact insight and judgment—supported just mild limitations, not extreme limitations, in all areas of mental functioning except following detailed instructions.  AR 21-25,

25

30, 538.

Further, to the extent Plaintiff points to Gabriela Gamboa's, Psy.D., findings of anxiety, slurred speech, delayed response times, borderline intellectual functioning, and poor concentration, insight, and judgment in support of a disability finding, Dr. Gamboa concluded that Plaintiff had just mild-to-moderate mental limitations, at most, not extreme mental limitations. Dkt. No. 13 at 19, citing AR 505; *see also* AR 30, 507.  While Plaintiff notes that Dr. Gamboa generally found his ability to work was impaired, this was not disputed—the ALJ found Plaintiff retained only minimal degrees of cognitive social, and adaptive functioning.  AR 23, 505.  Additionally, the ALJ explained that Dr. Gamboa's January 5, 2013 findings were inconsistent with subsequent, more timely evidence in the record, such as Nurse Villaruel's September 21, 2022 findings of normal speech; linear, focused, and goal-oriented thought processes; and good insight and judgment, and Ms. Herter's findings of normal speech and intact and sufficient attention in 2022, 2023, and 2024.  AR 26–27, 30, 697, 699, 714, 751, 907, 929, 965, 983.

Importantly, Plaintiff must show more than the "mere existence of impairments" to prove disability.  *Artis v. Barnhart*, 97 F. App'x 740, 741 (9th Cir. 2004) (citing *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)).  Here, the ALJ set out a detailed and thorough summary of the mental impairment evidence and medical opinion evidence and reasonably did not credit Ms. Herter and Nurse Villaruel's opinions as persuasive given the totality of the record.  AR 29-30.  While Plaintiff has a different interpretation of the medical evidence, he does not show the ALJ's interpretation was error.  *Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."); *Ryan*, 528 F.3d at 1198 (same).

In sum, the ALJ did not err in finding Ms. Herter and Nurse Villaruel's opinions not persuasive.

### C.    The ALJ Properly Relied on the VE's Testimony at Step   Five

#### 1.    Relevant Law

At step five of the sequential evaluation, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (alterations in original) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)) (citing 20 C.F.R. § 416.920(g)).  After assessing the RFC, the ALJ considers potential occupations that the claimant may be able to perform.  *See* 20 C.F.R. § 416.966.  In making a disability determination at step five, the ALJ relies primarily on the Dictionary of Occupational Title ("DOT") for "information about the requirements of work in the national economy."  *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).  The DOT is "a resource compiled by the Department of Labor that details the specific requirements for different occupations . . ."  *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016).  The "DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces."  Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).  The term "occupation," as used in the DOT, refers to the collective description of those jobs, and each occupation represents numerous jobs.  *Id.*; *see also Gutierrez*, 844 F.3d at 807.  As such, the DOT "lists the maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."  SSR 00-4p, 2000 WL 1898704, at *3.

27

Moreover, the VE's "testimony is one type of job information that is regarded as 'inherently reliable.'" *Ford*, 950 F.3d at 1160 (citing *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017)). Consequently, "an ALJ is entitled to rely on a VE's testimony to support a finding that the claimant can perform occupations that exist in significant numbers in the national economy." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022). However, when there is a conflict between the VE's testimony and the DOT, the ALJ "must determine whether the [VE's] explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Buck*, 869 F.3d at 1051-52.

### 2.    Analysis

Plaintiff argues that the ALJ failed to address or resolve the apparent inconsistency between the VE's testimony and the DOT. Dkt. No. 13 at 26-28. The ALJ found that Plaintiff's impairments limited him to no contact with coworkers and the public. AR 23. This restriction was included in the hypothetical posed to the VE. AR 70. In response, the VE testified that an individual with such limitations could perform work as a cleaner or day worker (DOT No. 301.687-014), a cleaner of laboratory equipment (DOT No. 381.687-022), and a housekeeper/cleaner (DOT No. 323.687-014). AR 71. Relying on this testimony, the ALJ concluded at step five of the sequential evaluation that Plaintiff was not disabled because he could perform these three occupations. AR 31-32.

Plaintiff argues that VEs typically testify that all occupations require some degree of interaction with coworkers. Dkt. No. 13 at 26. Here, the VE testified that Plaintiff could perform the identified occupations despite a restriction to no contact with coworkers or the public. AR 71. Plaintiff argues that it is "unlikely" that these jobs could be performed without any interaction with coworkers or the public, as "the DOT descriptions for these jobs explicitly

28

or implicitly involve such interactions." Dkt. No. 13 at 27.  For example, Plaintiff states that: a housekeeper/cleaner is tasked with cleaning "rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories" and "render[ing] personal assistance to patrons."  *See* DOT No. 323.687-014, 1991 WL 672783.  Plaintiff argues that this occupation explicitly involves contact with "patrons" or the public and strongly implies interaction with coworkers to complete assigned tasks.  Dkt. No. 13 at 27.

Next, Plaintiff asserts that a cleaner of laboratory equipment is described as a "laboratory assistant," "laboratory helper," and "tester helper" who "may deliver supplies and laboratory specimens to designated work areas."  *See* DOT No. 381.687-022, 1991 WL 673259.  Plaintiff argues that these responsibilities suggest interaction with coworkers, as assisting "others" and delivering materials across workspaces are not tasks that can be performed in isolation.  Dkt. No. 13 at 27.  Lastly, Plaintiff asserts that a day worker performs a range of household tasks, including cleaning, washing clothes, ironing, dusting, and vacuuming, and "[m]ay watch children to keep them out of mischief."  *See* DOT 301.687-014, 1991 WL 672654.  Plaintiff argues that this role similarly suggests exposure to both coworkers and the public, particularly when childcare or work in private homes is required.  Dkt. No. 13 at 27.

Plaintiff argues that the ALJ should have addressed the apparent conflict between the restriction in the hypothetical limiting Plaintiff to no contact with coworkers or the public, and the VE's testimony that such an individual could perform work as a day worker, cleaner of laboratory equipment, and a housekeeper/cleaner.  *Id.* at 28.  Plaintiff argues that the VE did not explain this deviation, and the ALJ failed to address the conflict at either the hearing or in the written decision.  AR 17-32, 59-73.

The Commissioner argues that Plaintiff waived his arguments by failing

29

to raise them during the administrative proceedings, despite being represented by counsel and having the opportunity to do so.  Dkt. No. 14 at 14.  The Commissioner's position has been rejected by the Ninth Circuit in *Lamear v. Berryhill*, 865 F.3d 1201 (9th Cir. 2017).  In *Lamear*, the Commissioner argued that claimant's failure to ask the VE to reconcile the DOT with his findings effectively waived the issue.  *See id.* at 1206.  The Ninth Circuit disagreed: "our law is clear that a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: 'When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency.' " *Id.* (quoting *Zavalin*, 778 F.3d at 846).

The Commissioner further argues that even assuming arguendo that the ALJ erred in failing to address the apparent conflict between the restriction in the hypothetical limiting Plaintiff to no contact with coworkers or the public, and the VE's testimony that such an individual could perform work as a day worker, cleaner of laboratory equipment, and a housekeeper/cleaner, Plaintiff articulates, at most, only harmless error. *See Burch*, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless").

To establish a conflict between VE testimony and the DOT, the conflict must be "obvious or apparent." *Gutierrez*, 844 F.3d at 808.  "A conflict is apparent only if the challenged vocational requirement is 'essential, integral, or expected' for the job." *Gutierrez*, 844 F.3d at 808.  While Plaintiff argues that his RFC provision for no contact with the public and coworkers precluded him from performing the cleaner, laboratory equipment occupation, he does not identify anything in the DOT description for this occupation that conflicts with his RFC.

30

The DOT description for the cleaner, laboratory equipment occupation states:

> Cleans laboratory equipment, such as glassware, metal instruments, sinks, tables, and test panels, using solvents, brushes, and rags: Mixes water and detergents or acids in container to prepare cleaning solution according to specifications. Washes, rinses, and dries glassware and instruments, using water, acetone bath, and cloth or hot-air drier. Scrubs walls, floors, shelves, tables, and sinks, using cleaning solution and brush. May sterilize glassware and instruments, using autoclave. May fill tubes and bottles with specified solutions and apply identification labels. May label and file microscope slides. May arrange specimens and samples on trays to be placed in incubators and refrigerators. May deliver supplies and laboratory specimens to designated work areas, using handtruck. May tend still that supplies laboratory with distilled water. May be designated Glass Washer, Laboratory (any industry) when cleaning glassware. May maintain inventory reports and logs.

DOT No. 381.687-022. None of these duties even arguably entail contact with coworkers or the public, let alone show that such contact was an essential, integral, or expected part of the occupation. *Gutierrez*, 844 F.3d at 808.

Plaintiff, without citation to any authority, asserts that VEs typically testify that all occupations require some degree of interaction with coworkers. Dkt. No. 13 at 26. Plaintiff also asserts that it is "unlikely" the cleaner, laboratory equipment occupation could be performed without any interaction with coworkers or the public. *Id.* at 24. The VE, however, did not testify that all occupations in the DOT require interacting with coworkers—rather, the VE expressly testified that a hypothetical individual who could not have contact with coworkers or the public would be able to perform the cleaner, laboratory occupation. AR 70–71. Plaintiff offers no explanation as to how unidentified VEs in unrelated cases or his own lay speculation invalidates the VE's testimony in this case.

31

Further, Plaintiff's contention that alternate titles for the cleaner, laboratory equipment occupation includes the word "helper" similarly fails to establish a conflict between the VE's testimony and the DOT.  Dkt. No. 13 at 27.  None of the job duties listed in the DOT show that a cleaner, laboratory equipment provides any assistance requiring social contact. *See* DOT No. 381.687-022.  In addition, Plaintiff's assertion that the cleaner, laboratory equipment occupation entails delivering materials in a way that requires contact with coworkers and/or the public is incorrect. Dkt. No. 13 at 27.  The DOT expressly states that the cleaner, laboratory equipment occupation may involve delivering things "to designated work areas," not people.  *See* DOT No. 381.687-022.  Plaintiff has not demonstrated any conflict between the DOT description for the cleaner, laboratory equipment occupation and his RFC.

The VE testified that there were 29,000 cleaner, laboratory jobs in the national economy.  AR 32, 71. This exceeds the number of jobs the Ninth Circuit has found to constitute a significant number at step five. *See Gutierrez*, 740 F.3d 519, 529 (holding 25,000 jobs constitutes a significant number of jobs).

Accordingly, Plaintiff's ability to perform the cleaner, laboratory equipment occupation alone constitutes substantial evidence supporting the ALJ's step-five finding.  The Court need not consider Plaintiff's arguments concerning the day worker and housekeeping cleaner occupations.  *See Hernandez v. Berryhill*, 707 F. App'x 456, 458–59 (9th Cir. 2017) (finding any error at step five harmless because ALJ properly determined that Plaintiff could perform one job identified by the VE that existed in significant numbers in the national economy).

## IV.   Conclusion

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g), IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.

IT IS SO ORDERED.

Dated: March 31, 2026

_____
Patricia Donahue
United States Magistrate Judge

33